IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JEFF GREER, | ) | |
| | ) | |
| | ) | |
|      Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-06-BE-04816-S |
| | ) | |
| BIRMINGHAM BEVERAGE COMPANY, | ) | |
| INC., | ) | |
| | ) | |
|      Defendant. | ) | |

## MEMORANDUM OPINION

The case is before the court on Defendant's Motion for Summary Judgment (doc. 19). Plaintiff's Complaint asserts these claims under Title VII and Section 1981, alleging that Defendant employer discriminated against Plaintiff, an African American employee, based upon his race when it failed to promote him and again when it terminated his employment.[1]  For the reasons stated below, the court will GRANT the Motion for Summary Judgment as to all counts.

## STATEMENT OF FACTS

Viewed in the light most favorable to the Plaintiff (*see Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007)), the following facts are material to the resolution of the instant motion.

---

[1] Plaintiff's Complaint includes the phrase "race discrimination and retaliation" in the Jurisdiction section, but does not include retaliation in its Causes of Action section. Plaintiff's brief in response to the Motion for Summary Judgment includes no argument or additional facts supporting a retaliation cause of action. The EEOC charge that Plaintiff filed included a check next to the category of "race" but not "retaliation." Accordingly, this court will assume that Plaintiff either did not intend to assert a claim for retaliation or has abandoned it.

1

Defendant, Birmingham Beverage Company, hired[2] Plaintiff, Jeff Greer, on May 13, 2004. Plaintiff is African American. Defendant distributes beverages such as beer and soft drinks and Plaintiff's job as a route pre-salesperson required him to drive to customer account locations on an assigned route, meet the store owners or managers, help the stores to determine the quantity of beverages to order, place orders for the stores, rotate the products on the shelf, ensure that the products had not expired, and promote and sell the products to an assigned customer list. Plaintiff was originally assigned to work Route Seven. One or more of his managers testified that he experienced the following performance problems with that route: (1) Plaintiff allowed too many out-of-date products to remain on customer's shelves or in their coolers and received numerous written "Improper Product Care/Disciplinary Action" reports[3]; (2) three or more customers complained that Plaintiff had not been by the store to provide service; (3) two customers complained that they were running out of Defendant's product before Plaintiff

---

[2] Plaintiff admits that his application for employment contained false statements about his education, employment history, criminal record, etc. Defendant claims that it would never have hired Plaintiff if it had known about the false statement and that it would have terminated Plaintiff if it had discovered them during his employment. Yet, because Defendant did not discover these false statements until after his termination, these false statements did not impact the promotion or termination decisions and are irrelevant to the issues in this particular motion.

[3] The following "Improper Product Care/Disciplinary Action" reports about Plaintiff were filed in company records: 7/27/04 - 1 expired package at 1 store; 7/28/04 - 41 expired packages and 3 damaged packages at 1 store; 8/4/04 - 2 expired packages at 1store; 8/6/04 - 7 expired packages at 2 stores; 8/9/04 - 1 expired package at 1 store; 8/13/04 - 5 expired packages at 2 stores; 8/23/04 - 5 expired packages at 1 store; 8/23/04 - 4 expired packages at 1 store; 8/24/04 - 2 expired packages at 2 stores; 8/26/04 - 1 expired package at 1 store; 9/1/04 - 2 expired packages at 2 stores; 9/1/04 - 7 expired packages at 2 stores; 9/7/04 - 2 expired packages at 2 stores; 9/10/04 - 3 expired packages at 1 store; 9/14/04 - 11 expired packages at 3 stores; 9/15/04 - 1 expired package at 1 store; 9/20/04 - 1 expired package at 1 store; 9/21/04 - 3 expired package at 1 store; 10/4/04 - 2 expired package at 1 store; 10/6/04 - 10 expired packages at 1 store; 10/7/04 - 26 expired packages at 3 stores; 10/8/04 - 1 expired package at 1 store; 10/8/04 - 14 expired packages at 1 store; 10/11/04 - 2 expired packages at 1 store; 10/13/04 - 17 expired packages at 1 store; 10/14/04 - 26 expired packages at 1 store; 10/15/04 - 5 expired packages at 1 store; 10/19/04 - 12 expired packages at 2 stores; 10/21/04 - 11 expired packages at 3 stores; 10/22/04 - 15 expired packages at 1 store; 11/1/04 - 10 expired packages at 2 stores; 11/2/04 - 18 expired packages at 1 store; 11/3/04 - 20 expired packages at 1 store; 11/10/04 - 5 expired packages at 1 store; 11/11/04 - 2 expired packages at 1 store; 11/18/04 - 2 expired packages at 1 store; 1/25/05 - 7 expired packages at 2 stores. Eighteen of these reports included a notation of disciplinary action.

would arrive to replenish it; (4) Plaintiff exchanged curse words with one customer after service problems; (5) Plaintiff's co-worker complained about Plaintiff's delivery problems; (6) one customer banished Plaintiff from his store; and (7) Plaintiff failed to rotate the product on customer premises as his job required.  Plaintiff received supervisor counseling regarding many of these problems and received a written disciplinary action called an "Employee Warning Report" on May 20, 2005.

Effective July 2005, Defendant changed Plaintiff's work route to Route Twelve. Defendant claims that it moved Plaintiff because of customer dissatisfaction with Plaintiff as a result of the problems listed above.  Defendant's "Payroll Status Change Form," reflecting the job change and dated 1/25/05, contains the following information:  a check is marked next to "transfer," not "promotion"; beside "Rate of Pay" is marked "Same"; and under the comments section are the words: "not allowed in Key Account Mikey's, [Food World #58] wants new rep. . . . "  Plaintiff insists that the route change was a promotion because the new route was larger than Route Seven, even though he did not receive an increase in salary.

After Plaintiff's route change, an Area Sales Manager (ASM) position became available. With the vacancy of an ASM position, Defendant analyzed its ASM configuration.  It decided to restructure it to better serve grocery customers by allowing one ASM to handle primarily grocery store sales.  Defendant promoted a Caucasion employee named Tommy Burton to the vacant ASM position, which would be the ASM handling primarily grocery store sales.  Burton had previously worked for many years as a manager at Bruno's Supermarket.  One of Defendant's Sales Managers, Marshall Nichols, had also previously worked in management at Bruno's with Burton, and Nichols had originally hired Burton with the intention of making him a manager

because of his grocery management experience. To allow Burton to learn the beverage business before entering management, Nichols placed Burton first in a sales position and eventually promoted him to the ASM job. Burton only hit his sales goals one out of twelve months as a salesman for Defendant.

Plaintiff admits that he did not apply for the vacant ASM position or express any interest in it. (Another employee told him that this ASM position was not being filled.) Because Defendant does not post available jobs, however, Defendant does not require current employees to file a formal application for new positions. Nichols, who made the decision regarding whom to place in the vacant ASM position, did not consider Plaintiff for the ASM job because he did not feel that Plaintiff had the requisite qualities or job skills, including leadership skills and management skills. Nichols chose Burton instead because of his grocery and management background. Plaintiff did not have management experience involving grocery stores. More than ten years prior to his job with Defendant, he held a position at Sears that involved supervising four other people. After Burton received the ASM position, Plaintiff did not complain to anyone at work that the promotion decision was based on racial discrimination.

During the Fall of 2005, Defendant's management personnel became aware of a problem involving Plaintiff's excessive use of his company-issued cell phone. Defendant provided to each route salesperson a cell phone with a specific limit of minutes: 300 minutes per month. Defendant's policy prohibited excessive use of the company cell phone and required that overages be deducted from the employee's paycheck. Plaintiff exceeded his cell phone allotment at least two or three times, resulting twice in verbal discipline from his supervisor, Robert Hooks. Defendant deducted overages from Plaintiff's pay during those months of overages. Plaintiff's

company cell phone bill from the period of September 22, 2005 to October 21, 2005 reflected that he had used 3,785 minutes (63.08 hours) within that one-month period. Of those minutes, 970 involved calls to and from Mississippi, where Plaintiff had relatives but where Defendant had no customers.

After examining the phone bill and discussing the problem, Nichols, with input from Defendant's general manager, Steve Barth, made the decision to terminate Plaintiff's employment. Nichols and Barth felt that the cell phone abuse warranted termination because it was inconsistent with Plaintiff's giving proper time and attention to job duties and because it represented insubordination; Plaintiff's supervisor had previously warned him about the excessive cell phone usage and he had ignored the warning. Plaintiff's Termination Report dated November 5, 2005 with an effective date of November 4, 2005 states the reason for termination as "violation of several company policies."

Plaintiff filed a Charge of Discrimination with the EEOC on November 30, 2005, claiming that his employer discriminated against him based on his race in failing to promote him and in terminating his employment.[4] Plaintiff filed the instant suit on December 4, 2006.

STANDARD OF LAW

Summary judgment is proper under Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ." *Celotex Corp.*

---

[4] The EEOC Charge and Complaint also reference claims to unpaid incentive bonuses, although Plaintiff does include separate count on this subject. Plaintiff's brief in Response to the Motion for Summary Judgment does not contain argument or additional facts to support any such cause of action. Accordingly, the court will assume that Plaintiff either did not intend to make a claim regarding the incentive bonuses or has abandoned it.

*v. Catrett*, 477 U.S. 317, 322 (1986)).  "[A] party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying [the evidence that demonstrates] the absence of a genuine issue of material fact.  *Id.* at 323.  After the moving party demonstrates an absence of evidence to support the nonmoving party's case, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact."  *Anderson*, 477 U.S. at 247-48.  A dispute of material fact is genuine if a reasonable jury, applying the relevant law to the evidence presented, could return a verdict for the nonmoving party.  *See Wright v. Sanders Lead Co.*, 2006 WL 905336 , *8-9 (M.D. Ala. 2006) *aff'd,* 217 Fed. App'x 925 (11th Cir. 2007)*(citing Barfield v. Brierton*, 883 F.2d 928, 933 (11th Cir. 1989)).

When considering a motion for summary judgment, a court must view the facts "in the light most favorable to the non-moving party . . . . ."  *Harris*, 127 S. Ct. at 1776.  The court does not "weigh the evidence and determine the truth of the matter" but rather, simply focuses on whether a genuine issue of material fact exists.  *Anderson,* 477 U.S. at 249.  Where a reasonable fact finder may "draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment."  *Allen v. Bd of Public Educ. for Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007).  "[T]he plain language of Rule 56( c) mandates the entry of summary judgment, after adequate time for discovery and upon

motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

## DISCUSSION

### I. TITLE VII

Title VII provides in pertinent part:

> It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's race. . . . [A]n unlawful employment practice is established when the complaining party demonstrates that race. . . was a motivating factor for any employment practice, even though other factors also motivated the practice.

42 U.S.C. § 2000e-2(a) and § 42 U.S.C. § 2000e-2(m). Plaintiff may prove that race was a motivating factor through direct or circumstantial evidence. *See Hall v. Alabama Ass'n of School Bds.*, 326 F.3d 1157, 1165 (11th Cir. 2003)(per curiam). In the instant case, Plaintiff provided no direct evidence of racial discrimination. The allocation of proof in cases where a Plaintiff relies on circumstantial instead of direct evidence of discrimination shifts in accordance with the three-step order of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972).

In the first *McDonnell Douglas* step, Plaintiff must produce evidence demonstrating that he can establish a *prima facie* case, thus giving rise to the presumption that the employer discriminated against him in the employment action made the basis of

the lawsuit.  *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).  In step two, the employer must rebut this presumption by producing a legitimate, non-discriminatory reason for the employment action.  *Id.* at 509.  The employer's "burden is one of production, not persuasion; it can involve no credibility assessment."  *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000)(quoting *St. Mary's Honor Center*, 509 U.S. at 509)).  If the employer meets its burden of production, then in the final step, Plaintiff has the burden of responding with evidence that the employer's reason was not a true one but rather, was a pretext for discrimination.  *See Combs v. Plantation Pattern*s, 106 F.3d 1519, 1528 (11th Cir. 1997).  Throughout this three-step analysis, the burden to prove discrimination remains upon Plaintiff's shoulders.  *See Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1081 (11th Cir. 2005)(per curiam).

### A.  The Promotion Claim

Plaintiff claims that Defendant discriminated against him when it failed to promote him to the vacant ASM position because of his race.  To establish a *prima facie* case of failure to promote where no direct evidence of discrimination exists, Plaintiff must prove the following:

> (1) he is a member of a protected class;
> (2) he was qualified for and applied for the position;
> (3) he was rejected despite those qualifications; and
> (4) the position was filled by a person outside his protected class.

*See Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005).[5]  Defendant concedes that Plaintiff was a member of a protected class and that the position was filled by a person

---

[5]Although the Eleventh Circuit has articulated two different *prima facie* standards for failure to promote claims, both parties cite the *Vessels* standard.

outside his protected class. Defendant also acknowledges that while Plaintiff did not formally apply for the position or even express an interest in it to management, the company does not require the posting of positions and, consequently, a formal application process for the position in question would not be a prerequisite for the position. Rather than argue about whether Plaintiff had "applied for the position" to establish his *prima facie* case, Defendant properly focuses on the true issue: whether Plaintiff was qualified for the ASM position.

     Defendant's evidence states that the ASM position in question had been restructured to include a high concentration of grocery business. While the qualifications for the new position were apparently not reduced to writing, the uncontradicted testimony of Defendant's management reveals that they considered grocery and management background to be a critical qualification for this particular ASM position. Plaintiff, however, did not produce evidence to show that he was qualified for the restructured ASM position. Indeed, Plaintiff testified that he did not know what the qualifications for this particular ASM job actually were and thus, apparently did not know that it had been restructured to focus on grocery business. He did not present evidence disputing that the new ASM position had a high concentration of grocery customers. He had never worked in the grocery industry and had certainly never worked in grocery management. He had once held a position managing four other people in a Sears retail store - not a grocery store. However, that position was in the distant past; he had not worked in any management position for ten years. His position at Sears was the sole evidence of true management experience.

     Plaintiff's further explanation of why he was "qualified" for the management job reveals a misunderstanding of the term "management." Plaintiff stated in his deposition that in addition

9

to his Sears job, he had management experience because he "managed" his own route with Defendant and his own route with a prior employer. While perhaps creative, this argument that directing "*me, myself, and I"* constitutes management nonetheless falls short of evidence of management qualifications. Plaintiff's misunderstanding of that term and his lack of information about the grocery-focus on this ASM job may explain why he mistakenly believed that he was qualified for the position, but Plaintiff's belief about his qualifications is not determinative.

 Plaintiff's remaining arguments about his qualifications for the promotion to management focus on his performance as a route salesperson. Plaintiff's claim of discrimination might be more persuasive <u>if</u> he had been a stellar performer. He was not. Rather, the facts show that he had numerous problems, including customer complaints about service, one customer banishing him from a store, thirty-six reports within a sixteen month period of out-of-date products, and one written disciplinary action. Given this evidence, Plaintiff cannot argue that he had no performance problems but argues instead that the person promoted was an even worse performer.[6] Once again, Plaintiff's argument is misfocused. According to Defendant's management, the primary qualification for the new ASM was *not* good performance as a route pre-salesman, but grocery management experience. Perhaps Defendant had promoted route pre-salesmen without management experience to ASM positions in the past, but Plaintiff presents no such evidence. Even if he were able to present such evidence, Defendant's managers testified

---

[6]Plaintiff focuses on the evidence that Burton hit his sales goals only one month out of twelve as a pre-route salesman. Other evidence shows, however, that Defendant hired Burton with the express intent of making him a manager. The route sales stint was supposed to be temporary; it was designed to give him a working knowledge of the beverage business so that he could be a better manager of the salesmen. Because he was never expected to prove himself as a salesman, his sales numbers were not critical. No evidence demonstrates that the managers who promoted Burton looked at his sales numbers before that promotion, but the evidence does show that they considered his extensive grocery management experience.

that this particular ASM positions had been structured differently than other ASM positions and Plaintiff presented no evidence to contradict that testimony.  Given the restructuring to include a high number of grocery store customers, the qualifications for the new ASM position would not necessarily correspond to the qualifications of other ASM positions with different clientele.

The undisputed evidence shows that grocery management experience was a critical qualification for the vacant ASM position in question.  Plaintiff did not have grocery management experience and only had a little management experience in the distant past.  Consequently, Plaintiff did not meet his *prima facie* case under the Title VII "failure to promote" claim by showing that he was qualified for the promotion.  This court will grant summary judgment as to that count.

Even assuming *arguendo* that  Plaintiff had been able to establish his *prima facie* case, the court finds that summary judgment would nevertheless be appropriate.  If Plaintiff could establish his *prima facie* case, the employer then would have the burden to articulate a non-discriminatory reason for failing to promote him.  *See McDonnell Douglas Corp.*, 411 U.S. at 802-3.  This burden is one of production, not of persuasion.  *See Texas Dep't. of Comty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981).  The Eleventh Circuit has characterized the burden as "exceedingly light."  *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983).  If the employer states a "clear and reasonably specific" non-discriminatory reason, it has met its burden.  *St Mary's Honor Center*, 509 U.S. at 529.  In the instant case, Plaintiff did not apply for or express an interest in the vacant ASM position, so Defendant did not formally consider him for the job.  Consequently, no formal document exists rejecting the promotion and stating the reasons therefor.  Defendant's proffered reason for promoting Burton instead of Plaintiff was that

the position included a high concentration of grocery customers and that Burton had extensive grocery management experience while Plaintiff had none. The court finds that this non-discriminatory reason is clear and reasonably specific and that Defendant has met its burden of production.

Once the employer has met his burden of articulating a non-discriminatory reason for failing to promote, it overcomes the presumption of discrimination. *See Reeves*, 530 U.S. at 143. To survive summary judgment, Plaintiff now must prove that the employer's articulated reason was not true but was, in fact, a pretext for discrimination. *Id.* Plaintiff argues that Defendant's reason is a pretext because Plaintiff's performance as a route pre-salesman was superior to Burton's performance as a route pre-salesman. Because Plaintiff - the alleged superior performer - is black and Burton is white*,* Plaintiff offers this evidence in support of pretext.

In making this argument, Plaintiff maintains his skewed focus on route performance instead of properly focusing on management experience. This focus is, of course, improper because Defendant's evidence does not show that route performance was a primary qualification for the new ASM position. Instead, it reveals that grocery management experience was a primary qualification because the ASM position had been re-structured to include a high concentration of grocery customers. Plaintiff has presented no evidence disputing Defendant's testimony that the new ASM did in fact contain a large number of grocery customers. He has presented no evidence that either the re-structuring process itself or the decision to restructure represented some sort of discriminatory conspiracy to give the job to a white employee. In fact, Plaintiff simply ignores the key qualification of grocery management experience altogether.

When the court properly focuses on the primary qualification for the new ASM position -

grocery management experience - the undisputed material evidence fails to support Plaintiff's claim of pretext.  As stated *supra*, Plaintiff presented no evidence that he had management experience involving the grocery industry. In fact, he presented no evidence that he had worked in a true management position during the ten years before the position in question became available.  In contrast, Tommy Burton, the person who received the promotion and his comparator, had extensive grocery management experience from his previous job at Bruno's, a grocery store.  Marshall Nichols, Defendant's general sales manager, had worked with Burton when they were both Bruno's employees, and he had personal knowledge of Burton's long-term grocery management experience and his capabilities as a manager.  Steve Barth, Defendant's general manager, testified that "it was [Burton's] long-term grocery and management . . . background that got him the job."

  To create a genuine issue of material fact supporting pretext, Plaintiff's evidence must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence."  *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004)(quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)) . Defendant's proffered reason for not promoting Plaintiff is simple:   given the number of grocery clients, it considered grocery management experience to be an important qualification for the ASM position, that Plaintiff had no such experience, and that the person it hired did.  This reason is plausible and coherent and Plaintiff has not presented any evidence contradicting it in any relevant way.  Accordingly, the court finds that no genuine issue of material fact exists to support the claim of pretext.

Having found that Plaintiff has not proved his *prima facie* case on the Title VII failure to promote claim and alternatively, having found that no genuine issue of material fact supports the claim of pretext, the court will grant summary judgment in favor of Defendant on the Title VII failure to promote count.

## B.  The Termination Claim

The remaining Title VII count in the complaint alleges that Defendant terminated his employment because of his race.  To establish a *prima facie* case of discriminatory termination, Plaintiff must demonstrate that

> (1) he is a member of a protected class;
> (2) he was qualified for the position;
> (3) he suffered an adverse employment action; and
> (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly situated, non-protected individual outside his protected class.

*Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003).  Defendant concedes that Plaintiff has met the first and third prongs of his case but argues that Plaintiff has not met prongs two and four.

Prong two of Plaintiff's prima facie case requires proof that he is qualified for the job. When the Plaintiff has held a job for a significant period of time, the Eleventh Circuit has inferred qualification for that position sufficient to pass that element of the *prima facie* case.  *See Crapp. v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001)(citing *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1495 n. 2 (11th Cir. 1987)).  This inference does not ignore employee performance issues; it simply recognizes when employees are initially qualified for employment and then job performance issues arise, those issues are more

appropriately addressed in the context of "pretext" rather than in the context of "qualification" during the Plaintiff's prima facie case.  See *Crapp*, 242 F.3d at 1020 (citing *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999), *cert. denied,* 529 U.S. 1109 (2000)).  While Defendant certainly does not suggest that Plaintiff was a perfect employee up to the time of his cell phone abuse, it nevertheless identifies that abuse (and the insubordination that it represented) as both the reason that Plaintiff was not longer qualified for employment and the reason that he was terminated.  This allegation represents the same intertwining of the issues of job misconduct and pretext that the Eleventh Circuit has addressed in previous cases, advocating that it be examined at a later stage of the *McDonnell Douglas* analysis.  *See, e.g., Holifield v. Reno*, 115 F.3d 1555, 1562 n. 3 (11th Cir. 1997).  Consequently, the court will infer Plaintiff's qualification from his two years of employment and will evaluate the allegations of work misconduct as a separate issue.

   Having determined that prongs one through three are not at issue, the court addresses the remaining fourth prong.  To satisfy his burden on this element, Plaintiff must identify similarly situated non-minority employees who were guilty of the same or similar misconduct but who were treated more leniently or disciplined in a more favorable fashion.  *See Lathem v. Department of Children and Youth Servs.*, 172 F.3d 786, 792-3 (11th Cir. 1999).  The Eleventh Circuit has specified that "the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *see also Wright v. Sanders Lead Co.*, 2006 WL 905336 , *8-9 n. 11 (M.D. Ala. 2006) *aff'd,* 217 Fed. App'x 925 (11th Cir. 2007)( noting that the Eleventh Circuit followed *Maniccia's* "nearly

identical" standard in its more recent decision of *Burke-Fowler v. Orange County, Fla*, 447 F.3d 1319 (11th Cir. 2006)).

Plaintiff has identified two other employees as potential comparators. For those comparators to satisfy the fourth prong of Plaintiff's *prima facie* case, they must be non-minority employees whose misconduct was nearly identical to Plaintiff's but did not result in their termination. The court's first step in analyzing this issue is to identify the misconduct that precipitated termination. Defendant's managers testified that Plaintiff's cell phone abuse and related insubordination was the cause of his termination. That abuse involved a telephone bill reflecting Plainiff's use of 3,785 minutes (63.08 hours) on his company cell phone within one month. The abuse represented a violation of company policy, which allowed only 300-500 minutes per month[7] on the company cell phone, and raised serious questions about how much time and attention Plaintiff was devoting to his job. It also represented insubordination because Defendant had warned Plaintiff about exceeding his minutes in previous months and yet, even after the warning, Plaintiff continued to flagrantly violate the company policy.[8] To meet his burden, Plaintiff must present evidence that at least one of Plaintiff's comparators is a similarly

---

[7]Plaintiff testified that the amount of minutes per month provided to route pre-salespeople during his employment was 300 but notes that Defendant issued a written policy as of November 2005 - after Plaintiff's termination - that provided 500 minutes per month. The phone bill in question greatly exceeded either allotment.

[8]While both parties raise Plaintiff's history of service problems in the discussion of this issue, the court finds that this history is at most a secondary reason for termination, the primary reason being the cell phone abuse and related insubordination. If a genuine issue of material fact remained on the primary reason, then the secondary reason might become material, but the court finds that no genuine issue exists. Accordingly, the court will not confuse this issue with a discussion of Plaintiff's history of service problems.

The court also notes that the Defendant would not be responsible ultimately for the overage on Plaintiff's cell phone bill; company policy required Plaintiff to reimburse all charges over the 300/500 minutes. Consequently, the issue was not that Plaintiff's excessive bill cost Defendant money; the issue was that Plaintiff's spending an inordinate amount of time on the phone presumably affected his work, violated company policy, and represented insubordination.

situated non-minority employee who greatly exceeded the monthly allotment of minutes on the company cell phone after receiving a warning.

Plaintiff presented as comparators B. J. Smith.and Ross Housh, both white employees. Plaintiff provided evidence that Mr. Smith and Mr. Housh each exceeded his cell phone minutes, perhaps more than once, and that each received a warning for that misconduct. Plaintiff points to no evidence, however, about the extent that Mr. Smith and Mr. Housh exceeded their minutes; the court does not know whether they each went over the allotment by five minutes or five thousand. Because Plaintiff exceeded his minutes by a flagrant multiple of twelve, the court finds that mere evidence of exceeding the allotment, without more specific information quantifying the egregiousness of that violation, is not a sufficient showing. Plaintiff's evidence does not contradict the affidavit of Defendant's CFO, Mr. Silinsky, who testified: "I am not aware of any other Birmingham Beverage salesperson who has exceeded his/her cell phone minutes so many times or by as much as [Plaintiff]." In addition, Plaintiff presented no evidence that Mr. Smith or Mr. Housh continued to violate the cell phone policy *after* receiving a warning. The court finds that Plaintiff has not demonstrated that the quality and the quality of either comparator's misconduct is nearly identical to the Plaintiff's misconduct. Because Plaintiff has failed to establish his *prima facie* case on the termination claim, the court will grant summary judgment on this remaining Title VII count.

Assuming *arguendo* that Plaintiff could establish his *prima facie* case, the court finds that summary judgment is nevertheless appropriate because no genuine issue of material fact supports a finding of pretext. As noted *supra*, Defendant offers a non-discriminatory reason for terminating Plaintiff: his cell phone abuse and related insubordination. The court finds that this

non-discriminatory reason is clear and reasonably specific and that Defendant has met its production burden. Consequently, the Plaintiff faces the burden of demonstrating that Defendant's reason was not true but instead, was a pretext for discrimination.

In support of pretext, Plaintiff argues that Plaintiff's excessive phone bill had no relation to Plaintiff's job performance. Plaintiff points to evidence that more than half of the minutes - 2,107 of the total 3,785 - were logged on off days or after the end of the workday[9]. Having reduced the work hour minutes to a mere 1,678 (still far removed from the 300-500 minute maximum), Plaintiff focuses on testimony that his job performance was satisfactory. He also focuses on the company policy requiring employees to pay for overages, reasoning that he, not the company, would ultimately pay the huge bill. If the cell phone abuse was not affecting his work and if the company was not paying for the overage, then he insists that his cell phone abuse did not damage the company and his termination was discriminatory.

This argument is misplaced. Plaintiff admits that the company had instituted a 300 minute-per-month cell phone policy, admits that he knew about it, and admits that he had been warned previously about exceeding the policy minutes. He admits that he logged over 3,785 minutes in one of the months after the warning. He further admits that as much as sixty percent of those calls may have been personal and that many of the calls were to or from Mississippi, where he had relatives but Defendant had no clients. In other words, Plaintiff has admitted to flagrantly flouting company policy after being warned not to do so. Plaintiff's cell phone overuse after the warning could not have been an accident; he was not five or even fifty minutes over the maximum

---

[9]While Defendant does not concede that the Wednesdays and weekends in question were days that Plaintiff was "off," the court will assume for the purposes of this motion that Plaintiff could prove that these minutes were logged during off-work hours.

but rather, his minutes represent twelve times the maximum allotment.  The company managers testified to their assumption that Plaintiff's talking on the phone for over sixty-three hours in one month would adversely affect his work duties.  Even if this assumption turned out to be wrong and Plaintiff had an amazing ability to muli-task,  Defendant's firing would not constitute discrimination.  The managers' incorrect belief that the cell phone abuse hindered his work duties might constitute an error in judgment but it does not constitute discrimination.  *See Nix v. WLCY Radio/Rahall Commc'ns,* Inc., 738 F.2d 1181, 1187 (11th Cir. 1984)("employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all, as long as its action is not for a discriminatory reason.").  As the Eleventh Circuit has cautioned, courts should "not sit as a super-personnel department that reexamines an entity's business decisions."  *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1501 (11th Cir. 1991)(quoting *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir. 1986), *cert. denied,* 479 U.S. 1066 (1987)).

      Putting job performance issues aside, Defendant has a right to institute reasonable company policies.  It also has a right, when an employee intentionally, repeatedly, and flagrantly violates those policies, to fire the employee.  As long as it applies its punishment for policy violations consistently to employees of protected and non-protected groups, then that punishment does not constitute discrimination.  *See Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002) (Plaintiff failed to show pretext when the evidence demonstrated that Plaintiff did violate company's rules and procedures and no evidence demonstrated that the company treated similarly situated employees from a non-protected class any differently.).  The court finds that  no genuine issue of material fact exists to support Plaintiff's claims of pretext.

      Having found that Plaintiff has not proved his *prima facie* case on the Title VII

termination claim and alternatively, having found that he has failed to create a genuine issue of material fact that Defendant's articulated reason was pretextual, the court will grant summary judgment in favor of Defendant on the Title VII discriminatory termination count.

## II.  Section 1981

Plaintiff also contends that Defendant's actions violated 42 U.S.C. § 1981.  The Eleventh Circuit has recognized that the same elements of a employment discrimination claim under Title VII apply to employment discrimination claims under Section 1981.  *See Turnes v. AmSouth Bank*, 36 F.3d 1057, 1060 (11th Cir. 1994).  Because the court has concluded that Plaintiff is unable to prove his claims of discrimination under Title VII, his Section 1981 claims fail as well and this court will enter summary judgment on the Section 1981 claims.

In summary, the court finds that Plaintiff has failed to prove under Title VII or under Section 1981 that Defendant discriminated against him in its employment actions of failing to promote him and of terminating his employment.  Accordingly, this court will enter a separate order GRANTING Defendant's Motion for Summary Judgment as to all counts in the Complaint.

Dated this 18th day of January, 2008.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE